[Cite as *Bier v. Am. Biltrite*, 2012-Ohio-1195.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
## No.    97085

# ESTATE OF FERUCCIO BIER

PLAINTIFF-APPELLANT

vs.

# AMERICAN BILTRITE, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-682564

**BEFORE:**   Boyle, P.J., Celebrezze, J., and Jones, J.
**RELEASED AND JOURNALIZED:**      March 22, 2012

**ATTORNEYS FOR APPELLANT**

Linda G. Lagunzad
David P. Pavlik
Brent Coon & Associates
Summit One Building
4700 Rockside Road, Suite 320
Independence, Ohio    44131

**ATTORNEYS FOR APPELLEES**

**For Union Carbide Corporation**

Richard D. Schuster
Perry W. Doran, II
Robert J. Krummen
Stephen C. Musilli
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio    43216-1008

**For Dal-Tile Corporation**

Kevin C. Alexandersen
Eric H. Mann
Daniel J. Michalec
Gallagher Sharp
6th Floor Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio    44115

**For Kentile Floors, Inc.**

James N. Kline
Bruce P. Mandel
Kurt S. Siegfried
Max W. Thomas
Robert E. Zulandt, III

Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio    44113-1448

MARY J. BOYLE, P.J.:

{¶1}   In this asbestos action, plaintiff-appellant, Patricia Bier, individually and as the executrix of the estate of Feruccio Bier ("Bier"), appeals from the trial court's decision granting summary judgment in favor of defendant-appellee, Union Carbide. She raises a single assignment of error:

{¶2}   "The trial court erred in granting appellee's motion for summary judgment when genuine issues of material fact as to whether asbestos fibers supplied by appellee were a proximate cause of decedent's mesothelioma exist."

{¶3}   We find Bier's sole assignment of error unpersuasive and affirm

Procedural History and Facts

{¶4}   Bier filed the underlying action for recovery of damages arising from her husband's, Feruccio Bier ("decedent"), development of mesothelioma and resulting death.   She filed suit against several defendants who manufactured products that allegedly contained asbestos and also against Union Carbide,[1] a supplier of raw asbestos to some of these manufacturers.   Union Carbide's Calidria asbestos was specifically marketed for vinyl-asbestos floor tile, epoxies for terrazzo flooring, mastics, rubber floor tile, and adhesives.

{¶5}   Bier alleged, among other things, that decedent was exposed to asbestos fibers supplied by Union Carbide and incorporated into various asbestos-containing

---

[1]From late 1963 until June 30, 1985, Union Carbide mined and sold chrysotile asbestos that was initially known as "Union Carbide Asbestos" and then sold under the trade name "Calidria."

products used by decedent or by others in his presence during his work as a laborer in the late 1950s and later as an owner of D&F Tile, a flooring company, starting in 1962 and continuing into the 1970s. According to Bier, decedent worked with products manufactured or supplied by Kentile Floors, Dal-Tile/American Olean, and Armstrong World Industries, all of which incorporated Union Carbide's Calidria asbestos.

{¶6} Union Carbide, however, moved for summary judgment, arguing that Bier cannot meet her burden of proof and demonstrate that decedent was "ever exposed to an asbestos-containing product manufactured, supplied, distributed or otherwise associated with Union Carbide." Bier opposed the motion, arguing that "evidence that Union Carbide's asbestos was incorporated into products used by decedent is sufficient to permit an inference that decedent was exposed to Union Carbide's asbestos." Following briefing and oral argument by the parties, the trial court ultimately granted Union Carbide's motion, finding, among other things, that "[t]here is no evidence in the record that any of the products to which Mr. Bier was exposed contained Union Carbide's Calidria asbestos."

{¶7} Bier appeals, challenging the trial court's grant of summary judgment.

Standard of Review

{¶8} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Accordingly, we afford no deference to the trial court's decision

and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.).

{¶9} As in any case, summary judgment is appropriate in an asbestos case when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56; *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus.

Genuine Issue of Material Fact

{¶10} In her sole assignment of error, Bier argues that the trial court erred in granting Union Carbide's motion for summary judgment. She contends that the record contains sufficient circumstantial evidence that supports a finding that her deceased husband had been exposed to Union Carbide's Calidria asbestos at some point in his career in the flooring industry. At the very least, she argues that a genuine issue of material fact exists as to this issue. We disagree.

{¶11} Bier points to three manufacturers of asbestos-containing floor products that she contends used Union Carbide's Calidria asbestos and that her husband was

exposed to these products in his career: (1) Kentile Floors, (2) Dal-Tile/American Olean, and (3) Armstrong World Industries. Bier offered the following evidence to establish decedent's exposure to Union Carbide's Calidria asbestos.

*Union Carbide Sales Records*

{¶12} According to Union Carbide sales records, Union Carbide shipped its Calidria asbestos fibers to the following manufacturers (among others): (1) Kentile from 1963 through 1985; (2) L&M Surco in 1975; and (3) Armstrong from 1965 through 1978.

*Deposition Testimony*

{¶13} Bier, who was married to decedent for nearly 48 years and helped him run his flooring business, presented her own deposition testimony in support of her claim that decedent was exposed to these manufacturers' products. Specifically, she testified that decedent used Kentile flooring in many different jobs over the years, including the flooring at the Brandt Street warehouse and the Ohio State Mental Center. Bier broadly testified that decedent "used a lot of Kentile" and therefore believed decedent used Kentile's vinyl flooring in other jobs that specifically required vinyl or resilient flooring, including some hospital and school facilities.

{¶14} Bier further offered the testimony of her husband's former employee at D&F Tile, Ralph Parin, who testified that he recalled using Kentile terrazzo tile on the

Vandalia school job. He specifically recalled the packaging and the name "Kentile" on the outside of the box containing the tiles.

{¶15} With respect to American Olean, Bier testified that her husband "used a lot of American Olean ceramic tile" in residential construction jobs in the 1960s and 1970s. She further testified that she "assume[d]" her husband used American Olean tile mastic or thinset with these jobs. Parin likewise testified that he believed that decedent used thinset purchased from American Olean for the Sinclair College job and the Wendy's jobs (done in the 1970s).

{¶16} As for Armstrong, Bier relied on Parin's testimony that D&F Tile used Armstrong sheet vinyl and mastic for the Prestonsburg, Kentucky nursing home job and the Xenia high-rise job (done in the 1970s or 1980s). Bier also presented deposition testimony of her husband's former co-worker, Ronald Vayna, who testified that he saw Armstrong products on jobs while working at Quinlan with the decedent in the 1960s.

*Discovery Responses*

{¶17} Bier offered discovery responses from Kentile and Armstrong that evidenced both defendants had manufactured some flooring products that contained asbestos during the time period that decedent was in business. And according to Dal-Tile's answer to interrogatory No. 3, L&M Surco manufactured a "thinset" mortar product that, prior to 1977, included asbestos fibers, and American Olean sold the thinset in its stores.

{¶18} Bier urges this court to accept the inference that because Union Carbide supplied raw asbestos to these manufacturers, Union Carbide's Calidria asbestos was present in the products that decedent purchased or used. Relying specifically on her testimony that her husband "used Kentile a lot" and that many of the jobs performed by her husband required the very type of flooring products Kentile manufactured, Bier argues that "the trier of fact could infer from the evidence presented that decedent would have been exposed to [Union Carbide's] asbestos fibers at some point during his long career in the flooring business." With respect to American Olean, Bier contends that "an inference could then be made that in purchasing tile and adhesives from American Olean over the course of two decades, particularly the 1960s and 1970s, decedent would have purchased asbestos-containing thinset material that, at some point, incorporated asbestos supplied by [Union Carbide]." And finally, as for Armstrong, Bier argues that Parin's and Vayna's testimony place Armstrong products at job sites that decedent worked.

{¶19} Bier's entire case essentially relies on the stacking of inferences stemming from the evidence that Union Carbide sold asbestos to the defendant manufacturers at one point during decedent's career and that decedent used some of these manufacturers' products during his career. Bier contends that this evidence is enough to infer that her husband was exposed to Union Carbide's Calidria asbestos. But the record reveals that these manufacturers purchased raw asbestos from other companies and that Union

Carbide was not the sole supplier of raw asbestos. Thus, even if we were to assume that sufficient evidence exists that decedent was exposed to asbestos-containing floor products manufactured or sold by Kentile, American Olean/Dal-Tile, or Armstrong, there is absolutely no evidence in the record that these products contained Union Carbide's Calidria asbestos. Nor is there sufficient evidence to raise a genuine issue of material fact; instead, Bier relies solely on speculation to support her claim.

{¶20} The mere fact that Union Carbide placed its Calidria asbestos into the marketplace is not enough to impose liability for decedent's mesothelioma and death when there is no link between the two. Indeed, Bier has failed to produce any evidence that Union Carbide's Calidria asbestos was contained in any product used or purchased by decedent.

{¶21} We further do not find that the appellate decision from Washington state is controlling in this case. Bier argues that *Taylor v. Union Carbide Corp.*, 147 Wash.App. 1017, 2008 WL 4788245 (Div. 2), is analogous to the instant case and supports reversing the trial court's decision. In *Taylor*, the appellate court reversed the trial court's decision granting summary judgment in favor of Union Carbide, rejecting Union Carbide's claim that there was no evidence that the plaintiff was specifically exposed to its asbestos. But unlike the instant case, the plaintiff presented evidence that specifically connected Union Carbide's Calidria asbestos to the products that the plaintiff was exposed. For example, the plaintiff established that he was exposed to

Hamilton Red Dot (a joint compound that contained asbestos) when working at Tacoma jobsites in 1972-1973 and presented testimony from Hamilton's president who stated that, aside from test batches, the use of Union Carbide's asbestos was "exclusive" in the 1970s. *Id.* at *3.

**{¶22}** In this case, we have no such comparable evidence as in *Taylor* that would raise a genuine issue of fact. Instead, Bier seeks to impose liability based on the stacking of inferences, which is simply not allowed under the law. *See Nationwide Agribusiness Ins. Co. v. J.D. Equip., Inc.*, 12th Dist. No. CA2011-06-012, 2012-Ohio-229, ¶ 21, citing *Parras v. Standard Oil Co.*, 160 Ohio St. 315, 116 N.E.2d 300 (1953), paragraph two of the syllabus (summary judgment standard does not permit inference stacking). And, although inferences are allowed when reasonably drawn from some proven facts, an inference can never arise from "mere guess, speculation, or wishful thinking." *Id.*

**{¶23}** Accordingly, because we find that no genuine issues of material fact exist, we overrule the sole assignment of error.

**{¶24}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR